# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:25-CR-00142-BMB |
| Plaintiff, | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG |
| JEYSON MARTINEZ | |
| Defendant. | **MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

This matter is before me on the Government's motion for detention of Defendant Jeyson Martinez ("Mr. Martinez") pursuant to 18 U.S.C. § 3142. For the reasons set forth below, the Government's motion is denied, and I order that Mr. Martinez be released on bond with the standard and special conditions set forth herein, including location monitoring and home detention.

## II. BACKGROUND

On April 2, 2025, the Government indicted Mr. Martinez on one count of illegal reentry in violation of 8 U.S.C. § 1326(a). (ECF No. 1). Magistrate Judge Jonathan D. Greenberg held an initial appearance on April 11, 2025, at which the Government moved for Mr. Martinez's detention pursuant to 18 U.S.C. § 3142(f)(2). (*See* ECF non-document entry dated April 11, 2025). Judge Greenberg granted the Government's motion and set a detention hearing before me, which took place on April 16, 2025.

At the hearing, the Government argued that the detention was warranted under 18 U.S.C. §§ 3142(e)(1) and 3142(f)(2) because no condition or combination of conditions

1

would reasonably assure Mr. Martinez's appearance. In making its argument, the Government relied, in significant part, on the fact that Mr. Martinez was subject to an ICE detainer and an order of removal and would likely be deported if released from detention. The Government asserted that the ICE detainer, combined with other factors, meant that Mr. Martinez was a flight risk and that his appearance could not be reasonably assured.

At the conclusion of the hearing, I requested that the parties submit post-hearing briefing regarding the impact of the ICE detainer on the detention analysis. (*See* ECF non-document entry dated April 16, 2025). The parties submitted their post-hearing briefs on April 24, 2025. (ECF Nos. 9-10). The matter is now ripe for decision.

## III. ANALYSIS

The Bail Reform Act permits the Government to move for detention under certain circumstances. Relevant here, the Government may seek pretrial detention if the case involves either (1) a serious risk that the defendant will flee; or (2) a serious risk that the defendant will obstruct or attempt to obstruct justice or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror. 18 U.S.C. § 3142(f)(2).[1] The Government seeks detention here solely based on a serious risk of flight. It does not argue that there is a serious risk Mr. Martinez will obstruct justice or attempt to threaten, injure, or intimidate a prospective witness or juror.

Detention hearings under the Bail Reform Act involve a two-step process. First, "[t]he Court is authorized to conduct a detention hearing (*i.e.*, to consider whether to detain [a] [d]efendant) only if the Government first establishes that one of the circumstances listed in .

---

[1] In some cases, the Bail Reform Act creates a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community or will reasonably assure the defendant's appearance. *See* 18 U.S.C. § 3142(e)(2)-(3). It is undisputed that this is not a case where a presumption of detention applies.

2

. . Section 3142(f) exists." *United States v. Mendoza-Balleza*, 420 F. Supp. 3d 716, 716-17 (E.D. Tenn. 2019). In this case, that means the Government must show, by a preponderance of the evidence, that there is either (1) a serious risk that Mr. Martinez will flee; or (2) a serious risk that he will obstruct or attempt to obstruct justice, or will threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror. *See* 18 U.S.C. § 3142(f)(2); *United States v. White*, No. 3:21-mj-04070, 2021 WL 2155441, at *3-6 (M.D. Tenn. May 27, 2021) (citing cases). If the Government meets its burden to obtain a detention hearing, it must then show by a preponderance of the evidence that there are no conditions or combination of conditions that would reasonably assure Mr. Martinez's appearance or the safety of any other person and the community. 18 U.S.C. § 3142(e)(1); *White*, 2021 WL 2155441 at *3.

At the detention hearing, I found that the Government had met its burden at the first step to justify the holding of a detention hearing and denied Mr. Martinez's oral motion to dismiss the Government's detention motion. I will first explain the basis for my conclusion on that issue. I will then analyze whether there are any condition or combination of conditions that can reasonably assure Mr. Martinez's appearance.

A. **Whether the Government Has Established a Serious Risk of Flight under 18 U.S.C. 3142 § (f)(2)**

At the first step, the "court must *find*—and [] it is not enough merely for the Government to claim—that the case involves a serious risk of flight." *White*, 2021 WL 2155441 at *7 (emphasis in original) (citing *United States v. Friedman*, 837 F.2d 48, 50 (2d Cir. 1988)). "*[E]vidence* (or at least concrete information proffered by the Government), and not mere conclusory assertions, of serious risk of flight are required to warrant the holding of a detention hearing." *Id*. (emphasis in original). "The preponderance of the evidence standard

3

requires that the risk be substantial, rather than speculative or theoretical." *United States v. Rodriguez-Fuentes*, No. 5:24-CR-00122-KKC-MAS, 2025 WL 711955, at *1 (E.D. Ky. Mar. 5, 2025).

The risk of flight analysis is complicated in this case because Mr. Martinez is subject to an ICE detainer and an order of removal, and he may very well be removed from the country prior to trial through no act of his own. I therefore asked the parties to submit supplemental briefing on the impact of the ICE detainer on the analysis.

In his post-hearing brief, Mr. Martinez argues that the ICE detainer and removal order have "no bearing" on his risk of flight because "a risk of involuntary removal does not establish a serious risk that [the defendant] will flee upon which pre-trial detention may be based." (ECF No. 10, PageID # 41) (quoting *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017)). The Government, by contrast, argues in its brief that the ICE detainer is "not determinative" but, rather is "one more factor" that I should consider in the analysis. (ECF No. 9, PageID # 34).

I agree with Mr. Martinez that the likelihood he will be removed from the jurisdiction against his will is not a risk that he will "flee" as that term is used in § 3142(f)(2)(A). Rather, as a number of courts have held, the concept of "flight" involves a volitional act on the part of the defendant. *See Ailon-Ailon*, 875 F.3d at 1337 ("a risk of involuntary removal does not establish a 'serious risk that [the defendant] will flee' upon which pre-trial detention may be based"); *Rodriguez-Fuentes*, 2025 WL 711955 at *2 (holding that the Government must make a "substantial showing that the defendant will take deliberate, voluntary action to flee to evade judicial oversight"); *White*, 2021 WL 2155441 at *10 (defining the risk of flight as "a risk that the defendant will intentionally avoid appearing in court as required") (emphasis

4

omitted).

That does not mean, however, that the ICE detainer is irrelevant, as a defendant facing mandatory deportation has an incentive to flee to avoid being deported. Accordingly, Mr. Martinez's ICE detainer is a proper consideration, though not a dispositive one, when assessing whether the Government has met its burden of showing a serious risk that he may flee. *See United States v. Aleman-Duarte,* No. 3:19-CR-149-PLR-DCP, 2020 WL 236870, at *5 (E.D. Tenn. Jan. 15, 2020) ("the Court may consider the presence of an ICE detainer but [] it is only one factor in the analysis") (internal quotations omitted) (citing cases); *Rodriguez-Fuentes*, 2025 WL 711955 at *6 (the fact that defendant was facing "almost certain deportation" was "one more factor weighing towards finding" serious risk of flight).

Considering the ICE detainer in conjunction with other evidence that the Government has proffered, I conclude that the Government has shown by a preponderance of the evidence that there is a serious risk Mr. Martinez might flee. In addition to the possibility that he will flee to avoid deportation, the nature of the charged offense—illegal reentry—demonstrates that Mr. Martinez is a flight risk because it indicates that he has some inclination to disobey orders of the Court. *See Aleman-Duarte*, 2020 WL 236870 at *4. The Government has also proffered evidence that, when officers arrested Mr. Martinez, he attempted to resist arrest. Mr. Martinez disputes the Government's account of that incident, asserting that he was confused about the situation and that his resistance consisted of turning away to get his wife's walker rather than attempting to flee. However, he does not dispute that he did not immediately comply with the officers' instructions.

Accordingly, as I stated during the hearing, I find that the Government has met its burden at step one of showing a serious risk of flight under 18 U.S.C. § 3142(f)(2). Mr.

Martinez's oral motion to dismiss the Government's motion for detention is denied, and I will proceed to determine whether any condition or combination of conditions can reasonably secure Mr. Martinez's appearance.

### B. Whether a Condition or Combination of Conditions Can Reasonably Assure Mr. Martinez's Appearance

§ 3142(g) sets forth four factors that a reviewing court must consider in determining whether there is a condition or combination of conditions that will reasonably assure the defendant's appearance: (1) the nature and circumstances of the offense charged; (2) the weight of evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)-(4).

The § 3142(g) analysis is again complicated by the existence of the ICE detainer, as courts in this circuit and throughout the county are divided on whether, and to what extent, an ICE detainer bears on the risk of non-appearance. Some courts have held that a defendant's appearance cannot be reasonably assured where the government is likely to remove the defendant from the country. *See Rodriguez-Fuentes*, 2025 WL 711955 at *7 ("if ICE initiated removal proceedings and Rodriguez-Fuentes was deported, he would not be able to appear for future Court proceedings. The Court, thus, finds that there is preponderant evidence that he will not appear for court if released"); *United States v. Cobix-Espinoza*, 655 F. Supp. 3d 584, 597 (E.D. Ky. 2023) (holding that defendant's likely removal from country if released "weighs heavily in favor of detention, and it alone nearly compels a finding that the United States has demonstrated by a preponderance of evidence that no release condition can assure [his] future appearance in this matter").

Other courts have held that the existence of an ICE detainer is irrelevant to the analysis

6

because the risk of non-appearance, like the risk of flight, involves an element of volition. *See*, *e.g.*, *United States v. Santos-Flores*, 794 F.3d 1088, 1091-92 (9th Cir. 2015) (holding that the "risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition" and that district court erred in relying on ICE detainer to find that no condition or combination of conditions would reasonably assure defendant's appearance); *United States v. Montoya-Vasquez*, No. 4:08CR3174, 2009 WL 103596, at *5 (D. Neb. Jan. 13, 2009) ("I conclude that the 'failure to appear' as used in the Bail Reform Act is limited to the risk that the defendant may flee or abscond, that is, that he would fail to appear by virtue of his own volition, actions and will").

A third line of cases holds that the existence of an ICE detainer is not dispositive but is relevant when weighing the § 3142(g) factors. *See United States v. Avelarea-Padilla*, No. 3:18 CR 291, 2018 WL 8899334, at *3 (N.D. Ohio Oct. 25, 2018) (holding that defendant's impending deportation was one factor in analysis but was outweighed by other factors); *United States v. Sanchez-Martinez*, No. 13-cr-00236-JLK, 2013 WL 3662871, at *5 (D. Colo. July 12, 2013) ("While the court cannot detain Mr. Sanchez-Martinez based solely on his immigration status or the ICE detainer, those facts are relevant and should be considered in the court's application of the Bail Reform Act."); *United States v. Vasquez-Robles*, No. 2:25mj55, 2025 WL 1090884, at *5 (E.D. Va. Apr. 7, 2025) ("the Government correctly argued that the Court may still consider the Defendant's ICE detainer and potential deportation as factors that may motivate him to flee and not appear").

In this case, the Government stops just short of arguing that the ICE detainer is dispositive, asserting that it "all but assure[s] that [Mr. Martinez's] release on bond would prevent his appearance at future Court proceedings." (ECF No. 9, PageID # 36). To the extent

7

the Government is arguing that the risk of non-appearance includes the Government's involuntary removal of a defendant pursuant to an ICE detainer and order of removal, I disagree, and instead find persuasive the decisions holding held the risk of non-appearance contemplates a volitional act on the part of the defendant.

In reaching that conclusion, it is important to note that "deportable aliens are not per se ineligible for bail . . . ." *United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018). However, "[i]f the court could consider as determinative the speculative probabilities that a defendant would be removed from this country by ICE once he is placed in ICE custody, it would effectively mean that no aliens against whom ICE places detainers could ever be released on conditions." *Montoya-Vasquez*, 2009 WL 103596 at *5. It is also notable that Congress could have created a rebuttal presumption in the Bail Reform Act that detention applies to defendants who are charged with illegal reentry but did not do so. *See United States v. Arnodo-Mercado*, No. 3:23-CR-119-JGC, 2023 WL 2633543, at *3 (N.D. Ohio Mar. 24, 2023).

At the same time, I disagree with decisions holding that an ICE detainer has no bearing whatsoever on the analysis. As with the risk of flight, the existence of the ICE detainer provides potential incentives for Mr. Martinez to avoid appearing. I will thus again consider the ICE detainer as one factor in the analysis but will not consider it as conclusive proof that Mr. Martinez's appearance cannot be reasonably assured.

I emphasize that nothing in this order should be read to suggest that ICE is somehow precluded from removing Mr. Martinez if he is released. As Mr. Martinez himself concedes, "[u]pon his release under the Bail Reform Act, the Government will retain the choice it had before it first arrested Mr. Martinez: it may take him into immigration custody and remove

him from the country, or it may wait until later (presumably, after the criminal case against him has concluded)." (ECF No. 10, PageID # 40). I agree. *See Veloz-Alonso*, 910 F.3d at 270 (holding that "ICE may fulfill its statutory duties under the [Immigration & Nationality Act] to detain an illegal alien pending trial or sentencing regardless of a [Bail Reform Act] release determination"). I merely conclude that the ICE detainer should not be considered conclusive proof that Mr. Martinez's appearance cannot be reasonably assured. Accordingly, I will proceed to consideration of the § 3142(g) factors, viewing the ICE detainer as a relevant factor, but not a dispositive one.

### 1. *The Nature and Circumstances of the Offense*

The first § 3142(g) factor is the nature and circumstances of the offense, including whether the offense is a crime of violence or involves sex trafficking, terrorism, a minor victim, a controlled substance, a firearm, explosives, or a destructive device. 18 U.S.C. § 3142(g)(1).

The Government has charged Mr. Martinez with illegal reentry. While illegal reentry reflects willful disobedience of a prior court order, it is not a crime of violence, does not involve a controlled substance, firearm, explosive, or destructive device, and does not otherwise fall within the offenses listed in § 3142(g)(1). In addition, the maximum penalty that Mr. Martinez faces is a relatively modest two years' imprisonment. *See* 8 U.S.C. § 1326(a). This nature of the offense thus, on balance, weighs in favor of Mr. Martinez. *See United States v. Jiminez-Lopez*, No. 18-mj-30320, 2018 WL 2979692, at *3 (E.D. Mich. June 14, 2018) (holding that nature of illegal reentry offense weighed in favor of release pending trial because defendant's likely guideline range was zero to six months and offense did not involve crime of violence, minor victim, or controlled substances); *Arnodo-Mercado*, 2023 WL 2633543 at *3 (holding that nature of the offense weighed in favor of defendant where

9

defendant was charged only with illegal reentry).

### 2. *The Weight of the Evidence Against Mr. Martinez*

The second factor is the weight of the evidence against Mr. Martinez. 18 U.S.C. § 3142(g)(2). This factor "goes to the weight of the evidence of dangerousness [or non-appearance], not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010).

As with the risk of flight analysis, while I will not consider Mr. Martinez's potential nonappearance as a result of the Government involuntarily removing him, the fact that he faces likely deportation increases his risk of nonappearance. In addition, although the facts regarding the incident are disputed, Mr. Martinez's decision to not immediately comply with officers' instructions at the time of his arrest demonstrates a risk of flight that bolsters the risk of nonappearance.

On the other hand, it is notable that Mr. Martinez made five separate in-person court appearances in connection with his civil illegal dumping case, and that he missed a sixth appearance in this case only because officers arrested him outside of the courthouse. In addition, as discussed in greater detail in connection with the third factor, Mr. Martinez is married and is the primary caregiver for his wife, an American citizen who is disabled and lives in this jurisdiction. Thus, while I conclude that the second factor somewhat weighs in favor of the Government overall, countervailing considerations limit the impact of this factor.

### 3. *Mr. Martinez's History and Characteristics*

The third factor is the history and characteristics of Mr. Martinez, including his character, family and community ties, employment, resources, length of residence, past conduct, history of drug or alcohol abuse, criminal history, record concerning appearance at court proceedings, and whether he was on probation, parole or other release at the time of his

arrest. 18 U.S.C. § 3142(g)(3). While there is evidence on both sides with respect to this factor, I conclude that this factor weighs in favor of Mr. Martinez.

The evidence presented at the hearing established that Mr. Martinez has lived in Ohio for several years and has been married to an American citizen for three years. The evidence also established that Mr. Martinez's wife is disabled and that he is her primary caregiver. Mr. Martinez has been unemployed for at least three years and has family living outside the country, factors that weigh against him. However, Mr. Martinez's marriage and status as primary caregiver to his wife provide strong reasons for him to abide by the orders of this Court.

The Government asserts that Mr. Martinez has no fixed residence, and proffered evidence that his wife was issued a citation because she and Mr. Martinez were squatting in a home owned by the City of East Cleveland. Mr. Martinez, however, proffered that the citation has been dismissed and that the City of East Cleveland is permitting Mr. Martinez and his wife to live in the home while she attempts to purchase it. The Government did not present any evidence contradicting Mr. Martinez's proffer. I therefore find that Mr. Martinez's living situation does not weigh against him.

It is also undisputed that, beyond his prior removal, Mr. Martinez's criminal history is relatively minor. The Government proffered evidence that Mr. Martinez was charged with illegal dumping, but he does not appear to have any other priors. And Mr. Martinez's behavior in connection with the illegal dumping charge weighs in favor of release, as Mr. Martinez proffered evidence he has complied with the conditions of his release and made five separate in-person court appearances. It is also undisputed that Mr. Martinez was arrested by immigration authorities outside the courthouse while attempting to attend a sixth court

appearance.

Mr. Martinez's alleged decision to disobey a court order and reenter the country after his removal should not be minimized and raises questions about his willingness to follow court orders in these proceedings. Nonetheless, his adherence to court orders in connection with the illegal dumping case, ties to his wife and the community, and minor prior criminal history, mean that this factor ultimately weighs in his favor.

### 4. Whether Mr. Martinez Presents a Danger to Any Person or the Community

The fourth and final factor is the nature and seriousness of the danger to any person or the community that would be posed by Mr. Martinez's release. § 3142(g)(4). This factor weighs heavily in Mr. Martinez's favor, as the Government does not dispute that Mr. Martinez does not present a danger to any person or the community.

In sum, the Government has presented evidence establishing that there is a risk of non-appearance, including as a result of the ICE detainer and order of removal, Mr. Martinez's decision to not immediately comply with officer's instructions at his arrest, and his alleged willingness to violate a court order by reentering the country after he was previously removed. However, considering the § 3142(g) factors as a whole, including Mr. Martinez's ties to his wife and the community, his relatively minor criminal history, and the apparent lack of danger to the community, the Government has failed to establish by a preponderance of the evidence that no condition or combination of conditions can reasonably assure Mr. Martinez's appearance. In particular, I find that Mr. Martinez's appearance can be reasonably assured through a combination of home detention and location monitoring, in addition to other standard conditions. The Government's motion is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, the Government's motion for detention is denied. I hereby

order that Mr. Martinez be released subject to a combination of conditions, including home confinement and location monitoring as directed by the pretrial services officer, as further stated on the record during Mr. Martinez's detention hearing.

Dated: May 5, 2025

*/s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge